UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FERNANDO NAVARRO HERNANDEZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JAMES E. DZURENDA, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:24-CV-00001-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 22, 46] |

    This case involves a civil rights action filed by Plaintiff Fernando Navarro Hernandez. ("Hernandez") against Defendants Joseph Benson, Roxanne Bybee, Erika Ceballos, Michelle Perkins, and Elizabeth Pritchard (collectively referred to as "Defendants"). (ECF No. 6.) Currently pending before the Court is Hernandez's motion for a preliminary injunction. (ECF No. 22.) Defendants responded, (ECF No. 26), and Hernandez replied, (ECF No. 34). On July 22, 2025, the Court ordered Defendants to file supplemental briefing to address issues not thoroughly developed by the response. (ECF No. 39.) Defendants filed their supplemental brief, (ECF No. 45), and Hernandez replied, (ECF No. 49). For the reasons stated below, the Court grants Defendants' motion to seal, (ECF No. 46), and recommends Hernandez's motion for a preliminary injunction, (ECF No. 22), be denied.

**I.　FACTUAL BACKGROUND**

    Hernandez is an inmate currently in the custody of Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). Hernandez is classified as a medically stable inmate with multiple medical conditions. (ECF Nos. 22 at 2-3, 26 at 1-2).

///

---

[1]　This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Hernandez alleges he suffers from a chronic neurological condition that causes "partial seizures, symptoms, and . . . severe neuropathic pain disorder attacks." (ECF No. 22 at 2.) In short, he alleges for years NDOC prescribed him 300mg Tegretol and 600mg of Neurontin, twice daily, for his symptoms but in 2022, Defendants revoked the prescription without cause. (*Id.* at 2-7) He alleges he was not treated for 13 months and since December 2023, NDOC doctors have prescribed different medications that have not addressed his symptoms. (*Id.*) He acknowledges he now receives some Tegretol but not Neurontin and he continues to have "daily severe spasms activity attacks" and other symptoms. (*Id.*) Defendants assert that in 2022, NDOC moved away from the general practice of prescribing Neurontin due to its high trade value in the prison setting as a drug that can create a euphoric effect. (ECF No. 45.) Defendants state Hernandez continues to receive treatment to address his neurological condition and that an electroencephalogram ("EEG") will take place within 45 days of the date of their supplemental brief, which was filed on August 5, 2025. (*Id.*)

In addition to his neurological condition, Hernandez also alleges he suffers from a growth in his nose that he asserts is cancerous. (ECF No. 22 at 7-10.) Hernandez alleges he was told by NDOC doctors he needed surgery and was referred to an ENT specialist to address the "tumor", but Defendants have not scheduled his surgery. (*Id.*) He states the tumor causes him constant pain, bleeding, and a rotten smell and alleges he has not received treatment since July 2024. (*Id.*) In supplemental briefing, Defendants acknowledge the need for surgery of this growth and note the surgery is scheduled to occur within 60 days of the date of their supplemental briefing. (ECF No. 45.)

Finally, Hernandez alleges he has significant heart issues dating back to a 2003 heart attack. (ECF No. 22 at 10-13.) In his complaint he alleged Defendants have failed to address many symptoms he continues to feel such as high blood pressure, chest pain, loss of taste, and dizziness and have not permitted him to see a cardiologist. (*Id.*)

///
///

## II. PROCEDURAL HISTORY

On January 2, 2024, Hernandez submitted a civil rights complaint under 42 U.S.C. § 1983. (ECF No. 1.) On December 23, 2024, the District Court entered a screening order on Hernandez's complaint, allowing him to proceed on Eighth Amendment claims for deliberate indifference to serious medical need regarding his chronic neurological conditions, nasal growth, and a dermatological condition. (ECF No. 5.) The Court dismissed his Eighth Amendment claims related to diet, asthma, and heart conditions. (*Id.*) On June 3, 2025, the parties appeared for a court mandated early mediation but failed to reach a settlement. (ECF No. 18.)

On June 16, 2025, Hernandez filed the instant motion for preliminary injunction requesting the Court order Defendants "to stop denying [Hernandez] 300 mg Tegretol and 600 mg Neurontin, twice daily;" to "receive the recommended nasal surgery;" and to relieve his "daily chest pain and shortness of breath and symptom attacks." (ECF No. 22 at 2, 19.) On June 30, 2025, Defendants responded to Hernandez's motion. (ECF No. 26.) On July 10, 2025, Hernandez replied. (ECF No. 34.) On July 22, 2025, the Court ordered Defendants to file supplemental briefing. (ECF No. 39.) On August 4, 2025, Defendants filed their supplemental brief. (ECF No. 45.) On August 11, 2025, Hernandez filed his reply to Defendants' supplemental brief. (ECF No. 49.)

## III. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008) (quotation marks and citation

omitted). A motion for preliminary injunction requires the Court determine whether the plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See id.* at 20 (citations omitted).

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Comm. of Cent. Am. Refugees v. Immigr. & Naturalization Serv.*, 795 F.2d 1434, 1442 (9th Cir. 1986). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the

constitutional minimum." *Id.* at 999.

Where the motion for preliminary injunction is related to new allegations of misconduct—distinct from the allegations at issue in the complaint—such a motion must be denied. *See, e.g.*, *Padilla v. Nevada*, No. 2:08-cv-410-LRH-RAM, 2011 WL 2746653, at *8 (D. Nev. June 3, 2011) (denying request for preliminary injunction unrelated to claims in the complaint); *Mitchell v. Haviland*, No. 2:09-cv-3012-JAM-KJN, 2014 WL 458218, at *2 (E.D. Ca. February 4, 2014) (denying motion for preliminary injunction where the conduct asserted in the motions is based on new assertions of misconduct unrelated to the acts of misconduct asserted in the complaint); *Burton v. Paramo*, No. 3:17-cv-1953-BEN-KSC, 2017 WL 6048805, at *4 (S.D. Ca. Dec. 5, 2017) (denying motion for preliminary injunction seeking injunction claimed retaliation for bringing underlying lawsuit because those acts were separate from claims asserted within the complaint itself.)

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winters*, 555 U.S. at 24. Therefore, as a threshold matter, the court lacks authority to issue injunctive relief when there is no "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Thus, the moving party must establish there is a sufficient nexus between the claims raised by the injunctive relief motion and the conduct asserted in the underlying complaint. *Id*.

IV.   **DISCUSSION**

In his motion, Hernandez requests court intervention "to stop denying [Hernandez] 300 mg Tegretol and 600 mg Neurontin, twice daily;" to "receive the recommended nasal surgery;" and to relieve his "daily chest pain and shortness of breath and symptom attacks." (ECF No. 22 at 2, 19.) Having reviewed Hernandez's motion with the above-cited principles in mind, the Court finds Hernandez has not made the showing required for an injunction to issue. The Court addresses each request in turn.

### A. Neurological Medication

First, Hernandez is requesting a mandatory, as opposed to prohibitory, injunction that the Court order Defendants to reinstate his previous prescription of "300 mg Tegretol and 600 mg Neurontin, twice daily" to address his neurological symptoms. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("This relief is treated as a mandatory injunction, because it 'orders a responsible party to 'take action.'") (citation omitted). Therefore, the standard for granting the mandatory preliminary injunction requested here is higher than for a prohibitory injunction and will not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia*, 786 F.3d at 740 (citations omitted). Thus, the Court must determine and analyze whether the facts and the law clearly favor a showing of deliberate indifference to serious medical need and whether extreme or serious damage will result to Hernandez if a mandatory injunction is not granted.

#### 1. Likelihood of Success on Eighth Amendment Claim

First, the Court must consider whether Hernandez has established that he is likely to succeed on the merits of his Eighth Amendment claim. The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id*. at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066

(9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *See Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *See Estelle*, 429 U.S. at 105-06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id*. at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and

7

was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id*. (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *See Jett*, 439 F.3d at 1096.

Again, as Hernandez requests a mandatory preliminary injunction, the motion will not to be granted unless both the facts and the law *clearly* favor Hernandez. *See Garcia*, 786 F.3d at 740 (citations omitted).

### i. Objective Standard

Defendants do not dispute that Hernandez has a serious medical need with respect to his neurological condition. Facts in the record submitted by both parties are sufficient to establish at this juncture that Hernandez does suffer from a chronic neurological condition that causes him several symptoms including seizures and pain. A neurological disorder that involves seizures is one that a reasonable doctor or patient would find important and worthy of comment or treatment and would significantly affect an individual's daily activities. *See Colwell*, 763 F.3d at 1066. Thus, the Court finds Hernandez has a serious medical need and has satisfied the objective prong of the deliberate indifference analysis.

### ii. Subjective Standard

Turning to the subjective prong, the crux of the issue appears to be that Hernandez disagrees with the medical opinion of NDOC physicians in prescribing him medication for his neurological symptoms. (*See* ECF Nos. 22, 49.) However, to establish that a difference of opinion amounts to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014)); *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021) ("Our

cases make clear that prison officials violate the Constitution when they 'deny, delay or intentionally interfere' with needed medical treatment. . . . The same is true when prison officials choose a course of treatment that is 'medically unacceptable under the circumstances.'") (internal citations omitted)), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). Typically, a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016); ("Eighth Amendment doctrine makes clear that '[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'" (citation omitted)); *Toguchi v. Chung*, 391 F.3d 1058 (9th Cir. 2004); *Franklin v. Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). "But that is true only if the dueling opinions are medically acceptable under the circumstances." *Edmo*, 935 F.3d at 786.

"[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986), *overruled by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) (overruling *Jones*, "[t]o the extent *Jones* . . . can be read to apply to monetary damages against an official who lacks authority over budgeting decisions"). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment" *Hamby*, 821 F.3d at 1092 (internal quotation marks and citation omitted).). Prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058.

Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (citing *Republic of the Philippines v. Marcos*, 862 F.2d

1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept ... hearsay for purposes of deciding whether to issue the preliminary injunction.")).

Defendants state that while there is "no notation explaining the reason [Neurontin] was discontinued," (ECF No. 45 at 2-3), Christy Coss, the Director of Nursing Servicing declares the medication was "likely" rescinded due a NDOC-wide policy decision to move away from prescribing Neurontin due to its "high trade" value. (ECF No. 45-1 at 3.) Defendants further state Hernandez has continued to receive treatment including alternative medications "to manage seizure symptoms" along with an upcoming electroencephalogram as part the larger course of treatment for his neurological symptoms. (ECF No. 45 at 2.)

Here, there is no evidence that Defendants' failure to prescribe Neurontin is an unacceptable or medically inappropriate course of treatment. As opposed to showing deliberate indifference to a serious medical need, the record establishes consistent attempts to treat Hernandez, especially after Neurontin was withdrawn and he complained of neurological symptoms. (ECF No. 47-1.) The records provided establish that medical providers are continuing to treat Hernandez with alternative medications and that an EEG and a review with a neurologist are planned in the near future. (ECF Nos. 45 at 3, 47-1.) Accordingly, Hernandez is receiving treatment for his neurological condition—just not the treatment that he prefers or believes he should receive. However, there is nothing in the record to suggest that the course of treatment is medically unacceptable under the circumstances. As such, Hernandez has not established that he is likely to succeed on the merits of his claim at this time.

### 2. Irreparable Harm

In the context of a mandatory preliminary injunction, Hernandez must also show that extreme or very serious harm will occur if an injunction is not issued. *Anderson*, 612 F.2d at 1115 (citations omitted) (emphasis added). As such, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined and showing that 'the requested injunction would forestall' the irreparable harm qualifies

as such a connection." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011)).

Here, as discussed above, the crux of the issue raised by Hernandez's motion is that he disagrees with the course of treatment prescribed by NDOC physicians. However, Hernandez is not being deprived of all seizure medication, just the medication he prefers. Moreover, Hernandez is also not being deprived of consistent medical care as the record establishes Hernandez is set to receive an EEG in the near future to review his neurological condition along with an appointment with a neurologist to review the results. (ECF No. 45 at 2.) Hernandez also acknowledges NDOC officials have attempted other medication and forms of treatment in recent months. (ECF No. 22 at 4-7.) Finally, Defendants make clear that while the NDOC has moved away prescribing Neurontin due its high trade value, "the medication can still be ordered and approved as non-formulary at the Utilization Review Committee's discretion." (ECF No. 45-1.) Thus, a prescription of Neurontin after the appropriate medical and administrative steps taken by the NDOC is not completely foreclosed. Therefore, the causal connection between the alleged irreparable harm and the relief sought is insufficient. *Nat'l Wildlife Fed'n.*, 886 F.3d at 819 (citations omitted). Due to the high standard for showing irreparable harm in the absence of a mandatory preliminary injunction, the Court finds that Hernandez does not meet his burden.

Accordingly, the Court recommends Hernandez's motion for preliminary injunction as to his first request be denied.

**B.     Nasal Growth**

Next, Hernandez requests the Court issue an order that Hernandez "receive the recommended nasal surgery." (ECF No. 22 at 2.) Hernandez asserts doctors stated he needed surgery to remove a growth in his nose but that no "surgery has occurred not a set date scheduled for surgery." (*Id.* at 9-10.) In their supplemental briefing, Defendants represent to the Court that "Hernandez was seen by the ENT Specialist at the in-house

ENT Clinic on June 16, 2025" and according to a June 24, 2025 report, the ENT specialist recommended surgery. (ECF No. 45 at 3.) Defendants further represent that the "procedure was authorized by the Utilization Review Committee on July 2, 2025" and the "surgical procedure is scheduled to occur within the next 60 days." (*Id.* at 3-4.) As a result, Defendants argue no injunctive relief is "warranted." (*Id.* at 4.)

Because Defendants have approved the surgery and represent that the surgery will take place within 60 days of the date of their supplement brief filed on August 4, 2025, the Court finds Hernandez's request to be moot. Hernandez acknowledges as such in his response to Defendants' supplement brief: "no injunctive relief is justif[ied]." (ECF No. 49 at 5.) A case is moot when it has "lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law." *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam). A motion for a preliminary injunction can therefore be moot where the relief requested has been obtained. *See DeFunis v. Odegaard*, 416 U.S. 312 (1974) (holding that case was moot where plaintiff was afforded the remedy requested). The record demonstrates Defendants are actively working to provide Hernandez with the proper medical treatment for the nasal growth and will provide the surgery in due course. Accordingly, the Court recommends Hernandez's motion for a preliminary injunction with respect to his second request be denied as moot.

### C. Heart Issues

Finally, Hernandez requests the Court to order the Defendants to "relieve" his "daily chest pain and shortness of beath and symptom attacks . . . ." (ECF No. 22 at 2.) He asserts that he has "not received [] adequate and effective medical treatment in this matter to prevent more damage to his heart." (ECF No. 49 at 6.) He further states that "an expert is necessary to understand to explain how Hernandez's heart valve(s) damage[] is the cause of his damage to this heart and blood vessel disorders." (*Id.*)

The Court presumes that Hernandez's requested injunctive relief is related to his third claim of inadequate medical for his heart condition. (ECF No. 5 at 12-15.) "In order

to grant a preliminary injunction, a court must first decide that the underlying claim has some chance of success." *Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1144 (9th Cir. 1989). However, the District Court found Hernandez "fail[ed] to state a colorable claim for high Eighth Amendment deliberate indifference based on his heart condition." (ECF No. 5 at 14-15.) Because Hernandez's underlying claim was dismissed, the Court cannot grant the request related to his heart condition. *See Padilla*, 2011 WL 2746653, at 8 (denying request for preliminary injunction unrelated to claims in the complaint). Thus, the Court recommends Hernandez's preliminary injunction be denied with respect to his third request for relief.

## V. MOTION TO SEAL

As to Defendants' motion for leave to file documents under seal, (ECF No. 46), the Court finds the motion should be granted. Defendants move to file exhibits to the response to the motion for preliminary injunction under seal because the exhibits contain Hernandez's confidential medical information. (*See* ECF No. 47.) When the documents proposed for sealing are "more than tangentially related" to the merits of the case, the Court applies the compelling reasons standard to determine whether sealing is appropriate. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016). Under the compelling reasons standard, "a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *United States v. Carpenter*, 923 F.3d 1172, 1179 (9th Cir. 2019) (quoting *Ctr. for Auto Safety*, 809 F.3d at 1096-97) (alteration in original). Here, the referenced exhibits contain Hernandez's sensitive health information. Balancing the need for the public's access to information regarding medical treatment against the need to maintain the confidentiality of the information weighs in favor of sealing these exhibits. Accordingly, the Court finds compelling reasons exist to seal the documents, and thus the motion, (ECF No. 46), is granted.

///

///

## VI. CONCLUSION

Consistent with the above, the Court grants Defendants' motion to seal, (ECF No. 46), and recommends Hernandez's motion for a preliminary injunction, (ECF No. 22), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Hernandez's motion for a preliminary injunction, (ECF No. 22), be **DENIED**.

**IT IS FURTHER ORDERED** that Defendants motion to seal, (ECF No. 46), is **GRANTED**.

**DATED**: August 15, 2025

_____
UNITED STATES MAGISTRATE JUDGE